# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIANTE DION SCOTT,<br><br>             Plaintiff,<br><br>   v.<br><br>SGT. J. ARVIZO, et al.,<br><br>             Defendants. | 1:18-cv-00023-LJO-GSA-PC<br><br>**SCREENING ORDER**<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 17.)**<br><br>**THIRTY-DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT NOT EXCEEDING 25 PAGES** |

## I. BACKGROUND

Tiante Dion Scott ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On January 4, 2018, Plaintiff filed the Complaint commencing this action together with a motion for leave to file a Complaint exceeding 25 pages in length. (ECF Nos. 1, 2.) On March 27, 2018, the court denied Plaintiff's motion to exceed 25 pages and granted Plaintiff leave to file an amended complaint not exceeding 25 pages. (ECF No. 13.) On April 30, 2018, Plaintiff filed the First Amended Complaint together with a motion to incorporate separately-filed exhibits that Plaintiff had not attached to the First Amended Complaint. He did so, apparently, to avoid

exceeding the 25-page limit for the complaint. (ECF Nos. 14, 15.) On May 7, 2018, the court denied Plaintiff's motion to incorporate exhibits and granted him leave to file a Second Amended Complaint with his exhibits attached. (ECF No. 16.) On May 29, 2018, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. 28 U.S.C. § 1915A. (ECF No. 17.)

## II.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III.    SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is currently incarcerated at Pelican Bay State Prison in Crescent City, California. The events at issue in the Second Amended Complaint allegedly occurred at North Kern State Prison in Delano, California, when Plaintiff was incarcerated there. Plaintiff names as defendants Sergeant J. Arvizo, Chief Deputy Warden J. Sutton, J. Knight (Appeals Examiner), M. Voong (Chief Appeals Examiner), C/O L. Baeza, C/O D. Ceballos, C/O L. Lira, C/O R. Morrell, M. Harder (Appeals Examiner) and John Does #1 and #2 (C/Os) (collectively, "Defendants").

A summary of Plaintiff's allegations follows.[1]

On January 27, 2016, C/O I. Lozano performed a random cell search on cell #109 in Facility Building 1, inhabited by Plaintiff and his cell mate whose last name was Beloney. Marijuana and manufactured alcohol (Pruno) were found in the cell. C/O Lozano did not follow procedures to inform the two inmates that marijuana had been discovered with the Pruno. The two inmates were each issued a Rules Violation Report (RVR). This caused several fights between the two inmates. Usually when contraband is found in an inmate's cell the inmate is notified and asked if he wants to own up to the violation. Plaintiff and his cell mate Beloney were not notified until 77 days later violating California regulations which permit a maximum of 45 days to issue an RVR, and 15 days to inform the inmate of misconduct.

On February 12, 2016, Plaintiff and Beloney were both found guilty of possession of manufactured alcohol causing more fights between the two inmates.

On February 27, 2016, Plaintiff was engaged by Beloney while exiting the dining hall, and a fight started. An unknown person, who Plaintiff believes was one of Beloney's friends, stabbed Plaintiff from behind in the neck. Yard officers ordered the two inmates to stop fighting and get on the ground, which they did. Plaintiff and Beloney were released back to their living quarters. Apparently, Plaintiff's stab wound was not visible to the yard officers as

---

[1] Plaintiff includes some allegations in the Second Amended Complaint about his medical care for his injuries. However, this summary of the Second Amended Complaint does not recite Plaintiff's allegations about medical care at length because Plaintiff indicates that his related medical claims are being addressed in his other pending case, 17-cv-01146-LJO-GSA-PC; <u>Scott v. Beregovskay</u>. ECF No. 17 at 10-11 ¶ 6, 12 ¶ 9, 14 ¶ 12, 16 ¶ 14.

it had not started bleeding yet. When Plaintiff got to the cell he noticed blood, and then profuse bleeding.

On February 28, 2016, Plaintiff reported to his job assignment. Because of his very serious injuries, Plaintiff had difficulties with his assignments. Plaintiff told his co-worker, Miller, that he had been stabbed the night before and could not raise his right arm. Miller was asked by Plaintiff's Investigative Employee if he knew that Plaintiff was injured.

After work, while on his way to his cell in Building 1, Plaintiff was ambushed by inmate Beloney in front of Building #1, and another fight started. Beloney pinned Plaintiff on the ground. Once off the ground, Plaintiff could not see any C/Os coming to break up the fight. Plaintiff ran away from Beloney, but Beloney followed and the fight continued. Defendant Sgt. Arvizo finally came and ordered the two inmates to get on the ground. Sgt. Arviso threw a smoke grenade in the inmates' direction. The fight stopped and the inmates got down on the ground. Both inmates were taken to holding cages to be interviewed by a nurse and C/Os. Sgt. Arvizo gave the inmates a No Enemy/Safety Informational Chrono, which both inmates signed. The inmates returned to their assigned cells and Plaintiff thought the situation was resolved, especially since Beloney had signed the Chrono.

Since this was the second fight between the two inmates, Plaintiff and his property were moved to Building #4; both inmates were previously in Building #1. Once in his new cell Plaintiff noticed that some of his property was missing. The costlier items were his TV, CD player, Hot Pot, Nike high top shoes, two pairs of new shorts, two tank tops, three new long-sleeved t-shirts, head phones, a fan, ten CD's, one new baseball cap, and food. Someone went into Plaintiff's cell while he was at work and stole the property. The only way this was possible was if John Does #1 and #2 (Building #1 tower officers) let someone into Plaintiff's cell.

On February 29, 2016, Plaintiff went out on the yard to find out who stole his property and to have one of inmate Beloney's friends tell Beloney to "squash" the conflict, which

Plaintiff thought was over. ECF No. 17 at 11 ¶ 8.[2] Plaintiff was informed that one of Beloney's friends would talk to Beloney, but did not think Beloney would let it go. Beloney returned early from his small engines class and attacked Plaintiff as soon as he saw him. Plaintiff did not see a weapon but a weapon was later recovered. Again, it took the C/O a while to get there. After the fight, Plaintiff and inmate Beloney were placed in holding cages to be interviewed by the nurse and C/O's for the second time, and the two inmates signed another No Enemy Chrono. Plaintiff attempted to alleviate the conflict between him and Beloney. Beloney antagonized Plaintiff and said, "I heard your cell got robbed." ECF No. 17 at 12 ¶ 10. In Plaintiff's opinion, Beloney probably had something to do with the missing items.

On March 1, 2016, Plaintiff sought assistance from a different group of Beloney's associates in an effort to have someone talk to Beloney. These individuals said there was nothing they could do to change Beloney's mind. They offered to provide a knife to Plaintiff to stab Beloney, but Plaintiff declined.

In prison, a person who refuses to fight is considered weak and targeted for violence, robbery, and removal from the prison yard. Plaintiff was in that category, and his age and medical condition did not save him from the violence to come.

Before Beloney could return from his small engines class, two individuals jumped Plaintiff causing him to be taken by ambulance to Central Health Facility. Plaintiff was injured on his left cheek and needed seven stitches. The fight happened because the C/Os would not separate Plaintiff and Beloney after three fights. Officers violated CCR title 15 §3271, which requires that inmates be separated if they break the No Enemy/Safety Chrono agreement. Under CDCR rules anyone who is jumped by more than one inmate has to be relocated to another yard. Inmates know this so when they want a person relocated they get the person jumped, which is formally called a "removal" on the prison yard. ECF No. 17 at 14 ¶ 11. Plaintiff should not have had to endure prison justice because the officers deviated from policy.

---

[2] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the Plaintiff's pagination of the Second Amended Complaint.

On March 1, 2016, Plaintiff was separated from Beloney and placed in administrative segregation (Ad-Seg) for safety concerns and further investigation. Before Plaintiff was sent to Ad-Seg, defendant Sgt. Avizo tried to trick him into signing a document that would have placed him on the Sensitive Needs Yard (SNY). In Plaintiff's opinion, officers were trying to defame Plaintiff's dignity, character, and reputation. Plaintiff formed this opinion because officers allowed Plaintiff's property to be stolen, the reaction time to the fights were extremely long, and the inmates were not separated after they breached the first Chrono. Also, a proper investigation was not conducted, especially since a weapon was discovered. The weapon was somehow removed from the evidentiary hearing. This behavior is similar to the old ways when officers staged and watched Gladiator Fights. C/Os have informants on the yard, and an investigation would have shown that Plaintiff was being victimized when his cell was robbed. Also, a C/O had to open the cell, and the tower officers were Does #1 and #2.

On March 8, 2016, Plaintiff was seen by Dr. Flores [not a defendant] after Plaintiff filed a grievance complaining about suffering in pain for eight days in Ad-Seg. Plaintiff's wound was infected, he was having night chills and sweats with nightmares, and he lost 35-40 pounds. Plaintiff was also depressed and prescribed Prozac. This was all because defendant Sgt. Arvizo and other officers did not protect Plaintiff's safety. Plaintiff was prescribed antibiotics and physical therapy, and it was later discovered that Plaintiff had a fragment of the object he was stabbed with on February 27, 2016, still in his neck.

On March 4, 2016, Plaintiff was issued an RVR for fighting on February 29, 2016. On March 11, 2016, Plaintiff was issued an RVR for fighting on February 28, 2016. Plaintiff was appointed an investigative employee to assist him and ask questions of the involved C/Os. On March 12, 2016, Plaintiff was issued an RVR for fighting on March 1, 2016. Plaintiff had hearings and he was found not guilty of the February 29th and March 1st fights, but he was found guilty for the February 28th fight.

Plaintiff questions Sgt. Arvizo's motive for writing him up for the March 1st attack because Plaintiff was the victim who ran away and had been hospitalized. Plaintiff alleges that Sgt. Arvizo had a duty under CCR title 15 § 3286 to protect inmates and should have known

that Plaintiff had to be separated from the yard after four days of fighting incidents. Sgt. Arvizo tried to have Plaintiff agree to be placed on the SNY instead of in Ad-Seg, but Plaintiff told him he would be in danger if he remained on the yard. Plaintiff would have been seen as a snitch if he had agreed to be placed on the SNY. There was no reason to place Plaintiff on the SNY yard.

Defendants C/O Baeza, C/O Ceballos, C/O Lira, C/O Morrell, and Sgt. Arvizo violated state regulations when they lied on their incident reports, and lied to the investigative employee. They withheld information and participated in the illegal act of the "Code of Silence" used by corrupt officers. ECF No. 17 at 20-23 ¶¶ 18-21, 23. They did not want to appear to be assisting an inmate against another C/O. C/O J. Fierro [not a defendant], Plaintiff's boss, also lied. ECF No. 17 at 22-23 ¶ 22. Sgt. Arvizo affected Plaintiff's release date and job pay number, which allows Plaintiff to pay off his restitution.

Defendant Warden Sutton violated California Code Statutes and Plaintiff's rights to due process and equal protection. Sutton was presented with all of the documentary evidence and had a responsibility to admonish his subordinates, but instead he hindered the investigation and enabled his employees to participate in a "Code of Silence", which makes him a willful participant in the act illegally performed by his employees.

On May 19, 2016, after having his prison grievance denied by Warden Sutton, Plaintiff sent a 602 appeal to the Third Level, to appeals coordinators Voong, Harden and Knight. On October 12, 2016, Voong and Knight denied the appeal. The appeals coordinators ordered Plaintiff to withdraw his medical documents which were needed as documentary evidence to show that Plaintiff was incapable of willfully fighting anyone. This deprived Plaintiff of his right to present a defense.

Plaintiff requests monetary damages, declaratory relief, preliminary and permanent injunctive relief, and costs of suit.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Supervisory Liability -- Warden

Plaintiff names defendants who hold supervisory positions, such as Warden Sutton. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate

employees based on *respondeat superior*, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. And Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915- 16 (9th Cir. 2012) (en banc). Rather, "[a] supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16.

Plaintiff alleges that Warden Sutton violated his rights because Sutton did not admonish his subordinates for illegal conduct and for participating in the "Code of Silence." Plaintiff alleges that Sutton saw the documentary evidence and reviewed all of the answers supplied by his employees. However, the fact that Warden Sutton saw the documentary evidence does not show that he knew his employees were acting illegally or violating Plaintiff's rights. There are no allegations of personal conduct by the Warden which violated Plaintiff's rights. Therefore, Plaintiff fails to state any claims against Warden Sutton, and also fails to state a claim against any of the Defendants based on supervisory liability.

### B. Due Process -- Fourteenth Amendment

The Due Process Clause protects against the deprivation of liberty and property without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought. Id. Protected interests may arise from the Due Process Clause itself or from state law. Id.

#### 1. Administrative Segregation (Ad-Seg)

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the

terms of confinement ordinarily contemplated by a sentence) (quotations omitted); <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of

///

prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. <u>Sandin v. Conner</u>, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484; <u>Myron v. Terhune</u>, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff alleges that he was placed in Ad-Seg as a safety measure to protect him from other inmates who were fighting with him, and that he suffered there in pain for eight days. To the extent that Plaintiff's term in Ad-Seg was the result of a disciplinary action, Plaintiff has not shown that his placement in Ad-Seg was outside the range of confinement normally expected in relation of ordinary incidents of prison life. Plaintiff has not alleged that he was confined in Ad-Seg for an unusually long time, nor under conditions that imposed significant hardships. Plaintiff claims that while he was in Ad-Seg for eight days his neck injury worsened, his wound became infected, he had night chills and sweats with nightmares, he lost 35-40 pounds, and he became depressed. It appears that Plaintiff's suffering was the result of his injuries and infection, but not as the result of his confinement in Ad-Seg. Rather, his suffering was caused by the worsening of his medical condition. Therefore, Plaintiff has no liberty interest in this case in remaining free from confinement in Ad-Seg.[3]

### 2. **Personal Property**

---

[3] In the Second Amended Complaint, Plaintiff indicates that he does not intend to bring an Eighth Amendment medical claim in this case. Plaintiff states that he is pursuing his medical claims related to this case in a separate § 1983 case pending at this court, case number 1:17-cv-01146-LJO-GSA-PC, <u>Scott v. Beregovskay</u>. ECF No. 17 at 10-11 ¶ 6, 12 ¶ 9, 14 ¶ 12, 16 ¶ 14.

Prisoners have a protected interest in their personal property. <u>Hansen v. May</u>, 502 F.2d 728, 730 (9th Cir. 1974). However, a plaintiff has no due process claim based on the defendants' unauthorized deprivation of his personal property—whether intentional or negligent—if a meaningful state post-deprivation remedy for his loss is available. See <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984). California's tort claim process provides that adequate post-deprivation remedy. <u>Barnett v. Centoni</u>, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy"); <u>see also</u> <u>Teahan v. Wilhelm</u>, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); <u>Kemp v. Skolnik</u>, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to <u>Hudson</u> and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court"). Due Process is therefore satisfied if there is a meaningful post-deprivation remedy available to him. <u>Hudson</u>, 468 U.S. at 533.

Here, Plaintiff alleges that the deprivation of his property was intentional and unauthorized. Therefore, Plaintiff fails to state a due process claim if he has a post-deprivation remedy. As discussed above, Plaintiff has an adequate remedy under state law. Accordingly, Plaintiff fails to state a cognizable due process claim for the alleged deprivation of his personal property during the search of his cell.

### 3. **Release Date**

Plaintiff alleges that the disciplinary proceeding against him adversely affected his release date.

When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973); <u>Young v. Kenny</u>, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991). If a § 1983 complaint states claims which sound in habeas, the court should not convert the complaint into a habeas petition. <u>See</u>

Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995). Rather, such claims must be dismissed without prejudice and the complaint should proceed on any remaining cognizable § 1983 claims. See Heck v. Humphrey, 512 U.S. 477, 487-88 (1994); Trimble, 49 F.3d at 585. Here, Plaintiff's claims, either directly or indirectly, challenge the duration of his confinement, a challenge which may be brought only in a petition for a writ of habeas corpus. Therefore, Plaintiff's § 1983 claim for due process based on the effect on his release date must be dismissed.

To bring a claim for damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck, 512 U.S. 477 at 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488. This "favorable termination" requirement has been extended to actions under § 1983 that, if successful, would imply the invalidity of prison administrative decisions which result in a forfeiture of good-time credits. Edwards v. Balisok, 520 U.S. 641, 643–647 (1997).

Plaintiff makes no allegations showing that Plaintiff's disciplinary proceeding that affected his release date has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus. Thus, Plaintiff is barred by Heck and Edwards from pursuing a claim for damages under § 1983 concerning the process he was provided which affected his release date.

Plaintiff shall be granted leave to amend the Complaint to cure the deficiencies in this claim.

### 4. **Job Pay Number**

Plaintiff alleges that Sgt. Arvizo's conduct at Plaintiff's disciplinary hearing affected Plaintiff's job pay number which allows Plaintiff to pay off his restitution. Plaintiff appears to

be challenging the CDCR's failure to assign him a wage-paying job that would enable him to make restitution payments.

Prisoners do not have a constitutional right to prison employment. Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Toussaint v. McCarthy, 801 F.2d 1080, 1094–95 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987); Bauman v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir. 1985). Because Plaintiff has neither a liberty interest nor a property interest in his prison job, Plaintiff is not entitled to any procedural due process protections in conjunction with this loss. Accordingly, Plaintiff's allegations fail to give rise to a due process claim with regard to the loss of his prison job.

### 5. **False Reports**

Plaintiff alleges that defendants C/O Baeza, C/O Ceballos, C/O Lira, C/O Morrell, Sgt. Arvizo, and Plaintiff's employer, C/O J. Fierro, lied in their incident reports, lied to the investigative employee, and/or lied at Plaintiff's disciplinary hearing.

There is no due process right to be free from false disciplinary charges or reports. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14–cv–2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12–cv–2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Hence, as a general rule, Plaintiff has no protected interest against false incident reports or false testimony during disciplinary proceedings. Due process does not entitle Plaintiff to the full panoply of rights due a defendant in a criminal prosecution.[4]

---

[4] "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With

13

However, allegations that an inmate has been subjected to a false disciplinary report can state a cognizable retaliation claim when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns.") Here, however, Plaintiff does not allege that any of the Defendants filed false reports against him in retaliation for his exercise of a constitutional right. Plaintiff alleges that defendants C/O Baeza, C/O Ceballos, C/O Lira, C/O Morrell, and Sgt. Arvizo lied on their incident reports and lied to the investigative employee because they did not want to appear to be assisting an inmate against another C/O. Though arguably unfair, Defendants' motives for filing false reports do not appear to be retaliatory.

Thus, under the legal standards described above, Plaintiff fails to state a claim based on false incident reports or false testimony during his disciplinary proceeding.

### 7. **Prison Appeals**

Plaintiff's allegations against defendants Knight, Voong, and Harder pertain to their review and handling of Plaintiff's inmate appeals. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, "[i]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.

---

respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563–71. In addition, "[s]ome evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." Id. at 455–56.

14

1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

///

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that defendants Knight, Voong, and Harder failed to properly process Plaintiff's appeals fail to state a cognizable claim.

### C. Failure to Protect -- Eighth Amendment

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse, Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005), and the failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff, e.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Plaintiff alleges that Defendants failed to protect him from inmates who started fights

with him or attacked him during four incidents -- on February 27, 2016, February 28, 2016, February 29, 2016, and March 1, 2016.

Plaintiff may be able to state a cognizable claim for failure to protect him under the Eighth Amendment. However, to state a claim Plaintiff must allege facts showing that a named Defendant knew that Plaintiff was at substantial risk of harm before a fight started. For each of the attacks, Plaintiff must show how a named Defendant knew, or found out, that Plaintiff faced a substantial risk of serious harm by the individual or individuals who attacked him, yet did not to protect him. Plaintiff should also provide more information about the content of the two Enemy/Safety Informational Chronos that were signed by Plaintiff and Beloney. What did the inmates agree to in each of the Chronos? Plaintiff should also offer information about "when" he and Beloney were first moved into separate cells and, if known, why they were separated, who decided to separate them, and who actually separated them into two cells. Without more information, the court cannot find that Plaintiff states a cognizable failure-to-protect claim against any of the individual Defendants.

Plaintiff must also allege facts demonstrating that a named Defendant acted unreasonably, ignoring the risk that was faced by Plaintiff. Plaintiff must show how each Defendant personally acted to violate his rights to be safe and protected. Under Plaintiff's allegations in the Second Amended Complaint, it appears that the officers responded reasonably to each of the altercations, ordering the inmates to stop fighting and get on the ground, then releasing them to their living quarters or conducting interviews and encouraging them to sign the Chronos. Plaintiff must, if he can, set forth facts that show otherwise.

Plaintiff also suggests that Sgt. Arvizo failed to protect him from harm by attempting to get Plaintiff to agree to be placed in the SNY yard. Specifically, Plaintiff claims that Sgt. Arvizo encouraged Plaintiff to sign paperwork agreeing to be placed in the SNY yard instead of Ad-Seg. Plaintiff states that he would have been in danger in the SNY because he would be treated as a snitch, and therefore did not sign the paperwork. Here, Plaintiff alleges no facts showing that Sgt. Arvizo intended to place him in harm's way, or understood that Plaintiff would be at substantial risk of serious harm if placed in the SNY yard.

Plaintiff shall be granted leave to amend this claim to cure the deficiencies found by the court.

///

///

### D. Equal Protection -- Fourteenth Amendment

Plaintiff brings a claim for violation of his rights to equal protection because he was not given the opportunity to present his defense. Plaintiff alleges that the same rules were not used for Plaintiff that were used for other inmates, for Plaintiff's punishment, hearing procedures, investigations, and documents.

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Here, Plaintiff has not alleged facts showing that he was intentionally discriminated against based on his membership in a protected class, or that he was intentionally treated differently than similarly situated individuals. Therefore, Plaintiff fails to state an equal protection claim.

### E. State Law Claims

Plaintiff alleges violations of CDCR procedures and California regulations. Plaintiff is informed that violation of state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional

or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the court fails to find any cognizable federal claims in the Complaint. Therefore, Plaintiff's state law claims fail.

### F. Doe Defendants

Plaintiff has named two Doe defendants in this case. Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

## V. CONCLUSION AND ORDER

The court finds that Plaintiff fails to state any cognizable claims in the Second Amended Complaint. The court will dismiss the Second Amended Complaint and grant Plaintiff leave to amend.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Accordingly, the court will provide Plaintiff an opportunity to file a Third Amended Complaint not exceeding 25 pages in length. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file the Third Amended Complaint within thirty days.

The Third Amended Complaint must allege facts showing what each named defendant did that led to the deprivation of Plaintiff's constitutional rights. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights by their actions. Id. at 676-77 (emphasis added).

In the amended complaint, Plaintiff should include only those facts needed to state his claims against each defendant, and there is no need for legal citations, arguments, or hypothetical examples. As for exhibits, while they are permissible, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). The court strongly suggests to Plaintiff that they should not be submitted where (1) they serve only to confuse the record and burden the Court, or (2) they are intended as future evidence. If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), Plaintiff will have the opportunity at that time to submit his evidence. If Plaintiff chooses to submit exhibits or to refer to exhibits in the amended complaint, he must attach the exhibits to the complaint for the court's review. Any exhibits must be filed together with the complaint, not submitted separately.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. George, 507 F.3d at 607 (no "buckshot" complaints). Plaintiff is also advised that he has not been granted leave to include allegations of events occurring after the initiation of this lawsuit on January 4, 2018.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey, 693 F 3d. at 907 n.1 (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Second Amended Complaint, filed on May 29, 2018, is DISMISSED for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Plaintiff is granted leave to file a Third Amended Complaint not exceeding 25 pages in length, within **thirty (30) days** from the date of service of this order;

4. Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:18-cv-00023-LJO-GSA-PC; and
5. Plaintiff's failure to file a Third Amended Complaint in compliance with this order within thirty days may result in a recommendation that this case be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: **December 16, 2018**              **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE