UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIANTE DION SCOTT, | 1:18-cv-00023-LJO-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM (ECF No. 23.)** |
| v. | |
| SGT. J. ARVIZO, et al., | |
| Defendants. | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

I.    **BACKGROUND**

　　　Tiante Dion Scott ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On January 4, 2018, Plaintiff filed the Complaint commencing this action, together with a motion for leave to file a Complaint exceeding 25 pages in length.  (ECF Nos. 1, 2.)  On March 27, 2018, the court denied Plaintiff's motion to exceed 25 pages and granted Plaintiff leave to file an amended complaint not exceeding 25 pages.  (ECF No. 13.)  On April 30, 2018, Plaintiff filed the First Amended Complaint, together with a motion to incorporate separately filed exhibits that Plaintiff had not attached to the First Amended Complaint, to avoid exceeding the 25-page limit for the complaint.  (ECF

Nos. 14, 15.) On May 7, 2018, the court denied Plaintiff's motion to incorporate exhibits and granted him leave to file a Second Amended Complaint with his exhibits attached. (ECF No. 16.) On May 29, 2018, Plaintiff filed the Second Amended Complaint. (ECF No. 17.)

On December 17, 2018, the court screened the Second Amended Complaint and dismissed it for failure to state a claim, with leave to amend. (ECF No. 18.) On March 21, 2019, Plaintiff filed the Third Amended Complain, which is now before the court for screening. 28 U.S.C. § 1915A. (ECF No. 23.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

III. **SUMMARY OF THIRD AMENDED COMPLAINT**

Plaintiff is currently incarcerated at California State Prison-Sacramento in Represa, California. The events at issue in the Third Amended Complaint allegedly occurred at North Kern State Prison in Delano, California, when Plaintiff was incarcerated there. Plaintiff names as defendants Sergeant J. Arvizo, Chief Deputy Warden J. Sutton, J. Knight (Appeals Examiner), M. Voong (Chief Appeals Examiner), C/O L. Baeza, C/O D. Ceballos, C/O L. Lira, C/O R. Morrell, M. Harder (Appeals Examiner) and John Does #1 and #2 (C/Os) (collectively, "Defendants").

A summary of Plaintiff's allegations follows:[1]

On January 27, 2016, C/O I. Lozano performed a random cell search of cell #109 in Facility Building #1, inhabited by Plaintiff and inmate Beloney. This cell search resulted in marijuana and manufactured alcohol (pruno) being found in the cell. C/O Lozano did not follow procedures to inform the two inmates that marijuana had been discovered with the pruno. Both inmates were issued Rules Violation Reports (RVRs). This caused several fights between the two inmates.

Normally when contraband is found in a cell the two inmates are notified and asked if either of them wants to own up to the violation. Plaintiff and his cell mate Beloney were not notified until 77 days later, violating California regulations which permit a maximum of 45 days to issue an RVR, and 15 days to inform the inmate of misconduct. On February 12, 2016, Plaintiff and Beloney were both found guilty of possession of manufactured alcohol causing a chain reaction of fights between the two inmates.

On February 27, 2016, sometime after 6:30 p.m., Plaintiff was engaged by Beloney while exiting the chow hall, and a fight started. While Plaintiff was fighting Beloney, someone -- believed to be one of Beloney's friends -- stabbed Plaintiff from behind in the neck. Yard officers ordered the two inmates to stop fighting and get on the ground, which they did. Plaintiff and

---

[1] Plaintiff includes some allegations in the Third Amended Complaint about his medical care for his injuries. However, this summary of the Third Amended Complaint does not recite Plaintiff's allegations about medical care at length because Plaintiff indicates that his related medical claims are being addressed in his other pending case, 17-cv-01146-LJO-GSA-PC; Scott v. Beregovskay.

Beloney were released back to their living quarters. Apparently, Plaintiff's stab wound was not visible to the yard officers as it had not started bleeding yet. When Plaintiff got to the cell he noticed blood, and then profuse bleeding.

On February 28, 2016, Plaintiff reported to his job assignment. He had very serious injuries and had difficulties with his assignments. Plaintiff told his co-worker, Miller, that he had been stabbed the night before and could not raise his right arm. Plaintiff was asking Miller to pick up the slack for him as Plaintiff could not raise his arm to do any heavy lifting. Miller was asked by Plaintiff's Investigative Employee (I.E.) if he knew that Plaintiff was injured.

At the end of the work day, at about 15:24-15:26 hours, Plaintiff was released from his work assignment that lasted from 7:00 to 15:00 hours. On his way to his cell in Building #1, Plaintiff was ambushed by inmate Beloney in front of Building #1, and another fight started. Beloney pinned Plaintiff on the ground. Once off the ground, Plaintiff could not see any C/Os coming to break up the fight. Plaintiff ran away from Beloney, but Beloney followed and the fight continued. Defendant Sgt. Arvizo finally came and ordered the two inmates to get on the ground. Sgt. Arvizo threw a smoke grenade in the inmates' direction. The fight stopped and the inmates got down on the ground.

Both inmates were taken to holding cages to be screened by a nurse and C/Os. Plaintiff requested to see a doctor and his request was denied. Sgt. Arvizo gave the inmates a No Enemy/Safety Informational Chrono, which both inmates signed. The inmates returned to their assigned cells and Plaintiff thought the situation was resolved, especially since Beloney had signed the Chrono.

Since this was the second fight between the two inmates, Plaintiff and his property were moved to Building #4; both inmates were previously in Building #1. Once in his new cell, Plaintiff noticed that some of his property was missing. The costlier items were his TV, CD player, Hot Pot, Nike high top shoes, two pairs of new shorts, two tank tops, three new long-sleeved t-shirts, head phones, a fan, ten CD's, one new baseball cap, and food. Someone went into Plaintiff's cell while he was at work and stole the property. The only way this was possible was if John Does #1 and #2 (Building #1 tower officers) let someone into Plaintiff's cell. Plaintiff

4

believes this was retaliation for Plaintiff's two fights which caused officers to work harder and go home later.

On February 29, 2016, Plaintiff went out on the yard to find out who stole his property and to ask one of inmate Beloney's friends to tell Beloney to end the conflict, which Plaintiff thought was over. Plaintiff was informed that one of Beloney's friends would talk to Beloney, but did not think Beloney would let it go. Beloney returned early from his small engines class and attacked Plaintiff as soon as he saw him. Plaintiff did not see a weapon, but a weapon was later recovered. Again, it took the C/O awhile to get there. After the fight, Plaintiff and inmate Beloney were placed in holding cages again to be interviewed by the nurse and C/O's for the second time, and the two inmates signed another No Enemy Chrono. Plaintiff again asked for a doctor but his request was denied.

In the holding cage, Plaintiff attempted to stop the conflict. Beloney antagonized Plaintiff and said, "I heard your cell got robbed." Third ACP, ECF No. 23 at 11 ¶ 10.[2] In Plaintiff's opinion, Beloney probably had something to do with the missing items stolen while Plaintiff was at work, and the culprit who opened Plaintiff's cell would have been the Tower Officers, Does #1 and #2.

On March 1, 2016, Plaintiff sought assistance from a different group of Beloney's associates in an effort to have someone talk to Beloney. These individuals said there was nothing they could do to change Beloney's mind. They offered to provide a knife to Plaintiff to stab Beloney, but Plaintiff declined.

In prison, a person who refuses to fight is considered weak and targeted for violence, robbery, and removal from the prison yard. Plaintiff was in that category, and his age and medical condition did not save him from the violence to come.

Before Beloney could return from his small engines class, two individuals jumped Plaintiff causing him to be taken by ambulance to the Central Health Facility. Plaintiff was

---

[2] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the Plaintiff's pagination of the Third Amended Complaint.

injured on his left cheek and needed seven stitches. The fight happened because the C/Os would not separate Plaintiff and Beloney after three fights. This is the supervisors' responsibility, namely Sgt. Arvizo and Captain C. Arce [not a defendant]. Under CDCR rules, anyone who is jumped by more than one inmate has to be relocated to another yard. Inmates know this so when they want a person relocated they get the person jumped, which is formally called a "removal" on the prison yard. ECF No. 23 at 13 ¶ 11. Plaintiff should not have had to endure prison justice because the officers deviated from policy.

On March 1, 2016, Plaintiff was separated from Beloney and placed in administrative segregation (Ad-Seg) for safety concerns and further investigation. Before Plaintiff was sent to Ad-Seg, defendant Sgt. Avizo tried to trick him into signing a document that would have placed him on the Sensitive Needs Yard (SNY). In Plaintiff's opinion, Sgt. Arvizo was trying to cover up wrongdoing because Arvizo had not followed procedure and was trying to defame Plaintiff's dignity, character, and reputation. (See Exh. E1.)[3] Plaintiff formed this opinion because officers allowed Plaintiff's property to be stolen, the reaction time to the fights were extremely long, and the inmates were not separated after they breached the first Chrono. Also, a proper investigation was not conducted, especially since a weapon was discovered. The weapon was somehow removed from the evidentiary hearing. This behavior is similar to the old ways when officers staged and watched Gladiator Fights. C/Os have informants on the yard, and an investigation would have shown that Plaintiff was being victimized when his cell was robbed. Also, a C/O had to open the cell. The correctional officers did nothing when they were notified that Plaintiff's property was missing, leaving Plaintiff to believe that the C/Os encouraged the theft.

On March 4, 2016, Plaintiff was issued an RVR for fighting on February 29, 2016. On March 11, 2016, Plaintiff was issued an RVR for fighting on February 28, 2016. Plaintiff was appointed an investigative employee to assist him and ask questions of the involved C/Os. On March 12, 2016, Plaintiff was issued an RVR for fighting on March 1, 2016. On March 23, 2016, and March 31, 2016, Plaintiff had hearings and was found not guilty of two of the fights. Plaintiff

---

[3] Here, Plaintiff refers the court to Exhibit E1. (3ACP, ECF No. 23 at 13:16.) However, no exhibits were attached to the Third Amended Complaint.

believes Sgt. Arvizo was trying to intimidate Plaintiff for requesting an I.E. and for seeking redress of grievances. Sgt. Arvizo should have known he was attempting to punish a victim for being attacked, and the RVR 115 should have been dismissed. Plaintiff alleges that Sgt. Arvizo had a duty under CCR title 15 § 3286 to protect inmates and should have known that Plaintiff had to be separated from the yard after four days of fighting incidents. Sgt. Arvizo tried to cause Plaintiff to agree to be placed on the SNY instead of in Ad-Seg, but Plaintiff told him he would be in danger if he remained on the yard. Plaintiff would have been seen as a snitch if he agreed to be placed on the SNY. Sgt. Arvizo should have known there was no reason to place Plaintiff on the SNY. After issuing the RVR, Sgt. Arvizo retaliated and attempted to silence Plaintiff's effort to address grievances and defend himself from the charges. Plaintiff was only trying to defend himself and was severely injured. But at the RVR hearing, Sgt. Arvizo refused to answer the important questions presented to him and lied on other occasions. Sgt. Arizo's report was missing the descriptive requirement of CCR tit. 15 § 3286, to identify the victim and aggressor.

Defendant C/O Ceballos lied on his report and lied on the record when asked questions at the RVR hearing. Ceballos answered six questions with the same answer, "I don't know which inmate Scott was." ECF No. 23 at 21:1-2. This was retaliation because Plaintiff was exercising his First Amendment right to seek redress of grievances.

Defendants C/O Baeza, C/O Lira, and C/O Morrell also lied on their incident reports and lied to the investigative employee. These officers conspired with Sgt. Arvizo to chill Plaintiff's First Amendment activities and failed to do their duty under 15 CCR § 3271 to secure the safety of all inmates.

Defendant Warden Sutton violated his duty by allowing his subordinates to function in an improper fashion not designed to further the goals of the CDCR. A supervisor is not responsible for actions of his employees, yet it is a supervisor's duty to enforce a company's common goal. Warden Sutton had a legal responsibility to correct his employees for not correctly reporting the fight that Plaintiff had with inmate Beloney, and for attempting to engage in the "Code of Silence" when they deliberately refused to answer questions or lie in an investigation. Once Warden Sutton was informed of his employees' conduct and chose not to correct their

actions, he became guilty of indifference to Plaintiff's First Amendment right to redress grievances that later attached Fourteenth Amendment violations.

Third level appeals coordinators Voong, Harder and Knight failed to perform their duties. Plaintiff provided the third level of appeals with medical documents pertaining to his severe condition. The coordinator rejected the grievance with instruction to remove the medical documents. Plaintiff complied and sent the grievance back, and the coordinator failed to enforce CCR Tit. 15 ¶¶ 3286 and 3271. The appeals coordinators are also guilty of chilling and silencing Plaintiff from seeking redress when they made Plaintiff remove evidence that would prove that Plaintiff could not willfully fight, and ignoring the acts complained of by the correctional officers, including the Warden.

Plaintiff requests monetary damages, declaratory relief, preliminary and permanent injunctive relief, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of

state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.      Supervisory Liability – Warden

Plaintiff names defendants who hold supervisory positions, such as Warden Sutton. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. And Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915- 16 (9th Cir. 2012) (en banc). Rather, "[a] supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16.

Plaintiff alleges that Warden Sutton violated his rights because Sutton allowed his employees to function in an improper fashion not designed to further the goals of the CDCR. According to Plaintiff, the Warden failed to correct his employees for not correctly reporting the fight between Plaintiff and inmate Beloney, and for participating in the "Code of Silence." However, Plaintiff alleges no *facts* showing that the Warden knew his employees were acting illegally or violating Plaintiff's rights. There are no factual allegations demonstrating personal

conduct by the Warden which violated Plaintiff's constitutional rights. Therefore Plaintiff fails to state any claims against Warden Sutton, and also fails to state a claim against any of the Defendants based on supervisory liability.

**B.** **Due Process -- Fourteenth Amendment**

The Due Process Clause protects against the deprivation of liberty and property without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought. Id. Protected interests may arise from the Due Process Clause itself or from state law. Id.

**1.** **Administrative Segregation (Ad-Seg)**

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff alleges that he was placed in Ad-Seg as a safety measure to protect him from other inmates who were fighting with him, and that he suffered there in pain for eight days. To

the extent that Plaintiff's term in Ad-Seg was the result of a disciplinary action, Plaintiff has not shown that his placement in Ad-Seg was outside the range of confinement normally expected in relation of ordinary incidents of prison life. Plaintiff has not alleged that he was confined in Ad-Seg for an unusually long time or under conditions that imposed significant hardships. Plaintiff claims while in Ad-Seg for eight days his neck injury worsened, his wound became infected, he had night chills and sweats with nightmares, he lost 35-40 pounds, and he became depressed. It appears that Plaintiff's suffering was the result of his injuries and infection, but not the result of his confinement in Ad-Seg. Rather, his suffering was caused by the worsening of his medical condition.[4] Therefore, Plaintiff has no liberty interest in this case in remaining free from confinement in Ad-Seg

## 2. **Personal Property**

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, a plaintiff has no due process claim based on the defendants' unauthorized deprivation of his personal property—whether intentional or negligent—if a meaningful state post-deprivation remedy for his loss is available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). California's tort claim process provides that adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy"); see also Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); Kemp v. Skolnik, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to Hudson and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court"). Due Process is therefore satisfied if there is a meaningful post-deprivation remedy available to him. Hudson, 468 U.S. at 533.

---

[4] In the Third Amended Complaint, Plaintiff indicates that he does not intend to bring an Eighth Amendment medical claim in this case. Plaintiff states that he is pursuing his medical claims related to this case in a separate § 1983 case pending at this court, case number 1:17-cv-01146-LJO-GSA-PC, Scott v. Beregovskay.

Here, Plaintiff alleges that the deprivation of his property was intentional and unauthorized, and that defendants John Doe #1 and #2 participated in the theft of his property when they opened Plaintiff' cell door. Therefore, Plaintiff fails to state a due process claim if he has a post-deprivation remedy. As discussed above, Plaintiff has an adequate remedy under state law. Accordingly, Plaintiff fails to state a cognizable due process claim for the alleged deprivation of his personal property during the search of his cell.

### 3. False Reports

Plaintiff alleges that defendants C/O Baeza, C/O Ceballos, C/O Lira, C/O Morrell, and Sgt. Arvizo lied in their incident reports, lied to the investigative employee, and/or lied at Plaintiff's disciplinary hearing.

There is no due process right to be free from false disciplinary charges or reports. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14–cv–2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12–cv–2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected interest against false incident reports or false testimony during disciplinary proceedings. Due process does not entitle Plaintiff to the full panoply of rights due a defendant in a criminal prosecution.[5]

---

[5] "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563–71.

Thus, Plaintiff fails to state a claim based on his right to be free of false incident reports or false testimony during his disciplinary proceeding.

### 4. __Prison Appeals__

Plaintiff's allegations against defendants Knight, Voong, and Harder pertain to their review and handling of Plaintiff's inmate appeals. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, "[i]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

---

In addition, "[s]ome evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." Id. at 455–56.

Thus, Plaintiff's allegations that defendants Knight, Voong, and Harder failed to properly process Plaintiff's appeals fail to state a cognizable claim.

## C.   <u>Failure to Protect -- Eighth Amendment</u>

The Eighth Amendment protects prisoners from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse, <u>Id.</u> at 833; <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005), and the failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff, <u>e.g.</u>, <u>Farmer</u>, 511 U.S. at 847; <u>Hearns</u>, 413 F.3d at 1040.

Plaintiff alleges that defendant Arvizo should have known that Plaintiff should have been separated from Beloney after three fights, that anyone jumped by more than one inmate has to be relocated to another yard, and that Plaintiff would be in danger if he were placed on the Sensitive Needs Yard.

Plaintiff fails to state a claim against defendant Arvizo for failure to protect him because Plaintiff has not stated *facts* showing that defendant Arvizo knew that Plaintiff was at substantial risk of harm, and yet deliberately ignored the risk and acted unreasonably. Plaintiff has not shown that defendant Arvizo possessed the requisite state of mind to violate Plaintiff's rights under the Eighth Amendment.

Plaintiff suggests that Sgt. Arvizo failed to protect him from harm by attempting to get him to agree to be placed on the Sensitive Needs Yard. Specifically, Sgt. Arvizo encouraged Plaintiff to sign paperwork agreeing to be placed in the SNY yard instead of Ad-Seg. Plaintiff states that he would have been in danger in the SNY because he would be treated as a snitch, and therefore did not sign the paperwork. However, Plaintiff alleges no facts showing that Sgt.

///

14

Arvizo intended to place him in harm's way or understood that Plaintiff would be at substantial risk of serious harm if placed in the SNY yard.

Therefore, Plaintiff fails to state a cognizable claim against defendant Arvizo for failing to protect him under the Eighth Amendment.

**D.    Retaliation**

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive.  See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco. Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1288–89 (9th Cir. 2003) (finding that a prisoner establishes a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267–68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

The third prong can be satisfied by various activities. Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing civil rights litigation similarly is protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity. . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999).  The correct inquiry is to determine whether an official's acts would chill

or silence a person of ordinary firmness from future First Amendment activities. <u>Rhodes</u>, 408 F.3d at 568–69 (citing <u>Mendocino Envtl. Ctr.</u>, 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively show that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." <u>Rizzo</u>, 778 F.2d at 532.

Plaintiff states his belief that officers took property out of his cell because Plaintiff fought with other inmates. (ECF No. 23 at 10.) Here, Plaintiff fails to state a retaliation claim against the officers because Plaintiff was not exercising protected First Amendment rights when he fought with other inmates.

Plaintiff also alleges that (1) defendant Arvizo tried to intimidate Plaintiff for requesting an Investigative Employee, "seeking redress of grievances," and attempted to silence Plaintiff's efforts to "address grievances and defend himself from charges" (ECF No. 23 at 15:12-15, 19:25-28); (2) defendants Ceballos, Baeza, Lira, and Morrell lied on their incident reports or to the investigative employee in a conspiracy to "chill Plaintiff's First Amendment activities" (ECF No. 23 at 20-23 ¶¶ 15-16); (3) Warden Sutton was guilty of "indifference to Plaintiff's First Amendment right to redress grievances" when he knew of his employees' conduct and chose not to correct their actions (ECF No. 23 ¶ 17.); and (4) the appeals coordinators silenced Plaintiff from "seeking redress" when they made Plaintiff remove evidence that would prove that Plaintiff could not willfully fight, in addition to ignoring the acts complained of by the correctional officers, including the Warden" (ECF No. 23 at 25:14-18). These allegations are largely conclusory and fail to state a cognizable retaliation claim because there are no *facts* showing that the Defendants acted against Plaintiff *because* he filed grievances, or *because* of other protected First Amendment activities.

Therefore, Plaintiff fails to state a claim for retaliation.

## E.    <u>State Law Claims</u>

Plaintiff alleges defamation against him and violations of CDCR procedures and California regulations. These are state law claims. Plaintiff is informed that violation of state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim

for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. <u>See</u> <u>Galen v. Cnty. of Los Angeles</u>, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. <u>See</u> <u>Paul v. Davis</u>, 424 U.S. 693 (1976); <u>also</u> <u>see</u> <u>Buckley v. City of Redding</u>, 66 F.3d 188, 190 (9th Cir. 1995); <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. <u>See</u> 28 U.S.C. § 1367. In this instance, the court fails to find any cognizable federal claims in the Third Amended Complaint. Therefore, Plaintiff's state law claims fail.

### F. __Injunctive Relief__

As part of the relief in this case, Plaintiff requests preliminary and permanent injunctive relief. Plaintiff seeks an order compelling all named Defendants in section III of the complaint to accurately record inmates' fights, to act with dignity when being asked questions by inmates, to correct known illegal acts of their subordinates, and to comply with all constitutional provisions guaranteed to inmates. (ECF No. 23 at 25:21-25.)

"A preliminary injunction is an extraordinary remedy never awarded as of right." <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 24, 129 S.Ct. 365, 376 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Id.</u> at 20 (citations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. <u>Id.</u> at 22 (citation omitted).

Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A).

The order sought by Plaintiff would not remedy the past violation of Plaintiff's constitutional rights and therefore is not narrowly drawn to correct the alleged past violations.

Also, when a prisoner seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir. 2013) ("When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim is moot"); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (finding prisoner's suit for library access to be moot upon his transfer to another prison). Once Plaintiff was transferred away from North Kern State Prison where the alleged violations occurred, any claims for injunctive relief regarding conditions at that institution became moot.

Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

## V.     CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claim against any of the Defendants in the Third Amended Complaint. Therefore, the court shall recommend that this case be dismissed for failure to state a claim.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Here, the court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court, and Plaintiff has not stated any claims upon which relief may be granted under § 1983. The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable claim. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      This case be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted under § 1983; and

2.      The Clerk be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**November 14, 2019**__                    _____/s/ Gary S. Austin__
                                                                    UNITED STATES MAGISTRATE JUDGE